United States District Court
for the
Southern District of Florida

| | |
|---|---|
| Skyler Wayne Sexton, Individually and as Personal Representative for the Estate of Kimberly Sexton, deceased, Plaintiff, <br><br> v. <br><br> Carnival Corporation, and others, Defendants. | ) ) ) ) ) ) Civil Action No. 20-20990-Civ-Scola ) ) ) ) |

### Amended Order Granting in Part and Denying in Part Motion to Dismiss

Plaintiff Skyler Wayne Sexton ("Plaintiff") brought this action against Defendant Carnival Corporation ("Carnival") seeking to recover for damages suffered in connection with the death of Kimberly Sexton ("Sexton") while she was aboard the *Carnival Sunshine* cruise ship in March 2019. (Second Am. Compl. ("complaint"), ECF No. 24 at ¶14.) The complaint asserts seven counts against Carnival, and Carnival has moved to dismiss only Count VII, for tortious interference with a dead body, and Count VIII, for the tort of outrage. (Def.'s Mot., ECF No. 26.) The Plaintiff has responded (ECF No. 30) and the Defendant had filed a reply (ECF No. 31). After careful consideration, the Court **grants in part** and **denies in part** Carnival's motion to dismiss (**ECF No. 26**).

### 1. Background[1]

Kimberly Sexton and 18 of her friends and family members were aboard the *Carnival Sunshine* in March 2019 when, on or about March 22, 2019, Sexton was taken to the ship's on-board medical center with complaints of shortness of breath and a sore throat. (ECF No. 24 at ¶15.) Although the complaint alleges that negligent care at the medical center resulted in Sexton's untimely passing, the focus of the motion at bar is certain conduct that took place *after* Sexton died. The complaint alleges that Carnival personnel took 36 photographs of her after she died, "including 24 photographs of her fully naked body, from every angle . . . without consent from her next of kin," despite the

---

[1] The Court accepts the Plaintiff's factual allegations as true for the purposes of evaluating RCCL's motion to dismiss. *Brooks v. Blue Cross & Blue Shield of Fla., Inc.*, 116 F.3d 1364, 1369 (11th Cir. 1997).

fact that Sexton was travelling with 18 companions. (*Id.* at ¶¶ 22-23 (ellipsis in original).)

In Count VII, the Plaintiff seeks recovery for Carnival's alleged tortious interference with Sexton's dead body. (*Id.* at ¶85.) This claim is based on the allegation that Carnival personnel took photos of Sexton without consent and in "a horrific manner." (*Id.*) The complaint alleges that the photos "were not taken for any sort of medical purpose since Ms. Sexton had already passed away." (*Id.* at ¶86.) The Plaintiff's position is that the Defendants were only permitted to "possess said remains consistent with and for only so long as was necessary to transfer [Sexton]" off the vessel. (*Id.* at ¶87.) The Defendants' failure to keep Sexton's body peacefully at rest "without interruption and harassment" – and instead "[i]nexplicably removing her clothing and turning her body to all sides in order to photograph her fully nude body" – is the basis for the tortious interference with a dead body claim.

In Count VIII, the Plaintiff seeks recovery for Carnival allegedly committing the tort of outrage. This claim stems from the same facts underlying Count VII, namely, the unauthorized and unnecessary photographs and manipulation of Sexton's body. However, the difference between these two counts is that Count VIII specifically seeks to recover for the "severe emotional distress and related physical and physiological injuries" that they suffered when they saw these photographs. (*Id.* at ¶100.)

### 2. Legal Standard

When considering a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), the Court must accept all the complaint's allegations as true, construing them in the light most favorable to the plaintiff. *Pielage v. McConnell*, 516 F.3d 1282, 1284 (11th Cir. 2008). A pleading must only contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). A motion to dismiss under Rule 12(b)(6) challenges the legal sufficiency of a complaint. *See* Fed. R. Civ. P. 12(b)(6). In assessing the legal sufficiency of a complaint's allegations, the Court is bound to apply the pleading standard articulated in *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007) and *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). That is, the complaint "must . . . contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Am. Dental Ass'n v. Cigna Corp.*, 605 F.3d 1283, 1289 (11th Cir. 2010) (quoting *Twombly*, 550 U.S. at 570). "Dismissal is therefore permitted when on the basis of a dispositive issue of law, no construction of the factual allegations will support the cause of action." *Glover v. Liggett Grp., Inc.*, 459 F.3d 1304, 1308 (11th Cir. 2006)

(internal quotations omitted) (citing *Marshall Cnty. Bd. of Educ. v. Marshall Cnty. Gas Dist.*, 992 F.2d 1171, 1174 (11th Cir. 1993). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678. "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* A court must dismiss a plaintiff's claims if he fails to nudge his "claims across the line from conceivable to plausible." *Twombly*, 550 U.S. at 570.

Thus, a pleading that offers mere "labels and conclusions" or "a formulaic recitation of the elements of a cause of action" will not survive dismissal. *See Id.* at 555. "Rule 8 marks a notable and generous departure from the hyper-technical, code-pleading regime of a prior era, but it does not unlock the doors of discovery for a plaintiff armed with nothing more than conclusions." *Iqbal*, 556 U.S. at 679.

### 3. Analysis

#### a. Applicability of the Death on the High Seas Act

The threshold question presented by the motion to dismiss is whether the Death on the High Seas Act ("DOHSA"), 46 U.S.C. § 761, applies to a claim for tortious interference with a dead body and for the tort of outrage when both claims arise from a death that occurred on the high seas. To put a finer point on the question: Does the scope of DOHSA encompass tort claims that arise, in every respect, *after* the decedent dies at sea? DOHSA provides, in pertinent part, that "[w]henever the death of a person shall be caused by wrongful act, neglect, or default occurring on the high seas . . . the personal representative of the decedent may maintain a suit for damages in the district courts of the United States." 46 U.S.C. § 761. The Eleventh Circuit has recently interpreted DOHSA, explaining that "where DOHSA applies, it preempts all other wrongful-death claims under state or general maritime law." *LaCourse v. PAE Worldwide Inc.*, No. 19-13883, 2020 WL 6735275, at *6 (11th Cir. Nov. 17, 2020).

DOHSA provides significant protection to defendants, hence its invocation here by Carnival. Specifically, when DOHSA applies, it limits the amount of recovery to "a fair compensation for the pecuniary loss sustained by the individuals for whose benefit the action is brought." 46 U.S.C. § 30303. Accordingly, non-pecuniary damages, such as the damages sought by the Plaintiff for pain and suffering and mental anguish, are not recoverable when DOHSA applies. *See Dooley v. Korean Air Lines*, 524 U.S. 116, 123 (1998); *see also Miles v. Apex Marine Corp.*, 498 U.S. 19, 31 (1990).

The Court begins its analysis with the text of the statute. DOHSA, on its face, applies when a claim seeks recovery for a death that was "caused" on the high seas. 46 U.S.C. § 761. Certainly, photographing and manipulating Sexton's dead body in no way caused her death. In the Eleventh Circuit's most recent encounter with DOHSA, it reiterated the well-established effect of DOHSA, which is to "preempt[] all other wrongful-death claims under state or general maritime law." *LaCourse*, 2020 WL 6735275 at *6. Tortious interference with a *dead* body is, by definition, not a wrongful-death claim. As pled in this case, the tort of outrage is also not a wrongful-death claim.

Carnival concedes that *Eisenman v. Carnival Corp.*, 424 F. Supp. 3d 1303 (S.D. Fla. Dec. 2019) (King, J.), appears to support the Plaintiff's position that the two claims at issue are not barred by DOHSA. In *Eisenman*, the court denied a motion to dismiss a claim for intentional infliction of emotional distress on DOHSA grounds where the claim was "not the anguish of loss, but rather the anguish of the events leading to the loss as directly and personally experienced by the plaintiffs." *Id.* at 1307. Carnival attempts to distinguish *Eisenman* by arguing that the Plaintiff in this case is not claiming harm resulting from experiencing the events leading to the loss, but instead is seeking recovery for "the anguish of loss" – an injury expressly carved out of *Eisenman*. (ECF No. 26 at 5.) The Court disagrees. The Plaintiff is not bringing a claim merely for "the anguish of loss." That anguish, resulting from purported medical malpractice, would have existed irrespective of whether Carnival personnel went on to manipulate and photograph Sexton's body after she died.

What the Plaintiff is suing for is the injury caused after the death, when Carnival personnel mishandled Sexton's body. It is the subsequent mishandling of Sexton's dead body – not "the fact that the death occurred," as Carnival argues – that is the basis of these claims. (*Id.*) To put it another way: even if Carnival had absolutely nothing to do with Sexton dying and DOHSA, which applies only to those who caused the death, was wholly inapplicable to this case, the Plaintiff would still have a cause of action for the mishandling of the body. Moreover, Carnival's position would yield an absurd result. If Carnival were correct, then one who *causes a death* on the high seas would be *immune* from non-pecuniary damages for later mishandling the dead body; and only those with *no causal relationship to the death* would be unprotected by DOHSA and *liable* for non-pecuniary damages arising from their mishandling of the body. In the absence of any supporting authority, the Court declines to take such an expansive approach to DOHSA by applying it to claims unrelated to the cause of death. In sum, DOHSA does not apply to these claims that arose after – and are wholly unrelated to the cause of – Sexton's death.

### b. Applicability of the Litigation Privilege

Carnival argues that even if DOHSA does not apply, Count VII and Count VIII both fail as a matter of law because of the litigation privilege. By way of background, the original complaint made no allegations concerning the tortious mishandling of Sexton's body or the photographs taken thereof. It was only "[u]pon review of responsive documents" produced during discovery that the "Plaintiff discover[ed] important evidence to support" amending the complaint by adding counts for tortious interference with a dead body and the tort of outrage. (Pl.'s Mot. for Leave to Amend Complaint, ECF No. 18 at 2.) Thus, the act of producing these photographs through discovery is how the Plaintiff learned of the photographs, which resulted in the Plaintiff amending the complaint to state a claim in connection with said photographs.

The litigation privilege "provides absolute immunity to any act occurring during the course of a judicial proceeding, regardless of whether the act involves a defamatory statement or other tortious behavior, so long as the act has some relation to the proceeding." *El Hassan v. Liberty Home Equity Solutions, Inc.*, 2018 WL 3134418, *2 (S.D. Fla. June 26, 2018) (Martinez, J.). Although the litigation privilege may be considered an affirmative defense, it is well-settled that it can also be considered on dismissal if the conduct at issue "occurred during the course of a judicial proceeding and had a substantial relation to that proceeding." *Jackson v. BellSouth Telecommunications*, 372 F.3d 1250, 1276 (11th Cir. 2004).

The Court concludes that the count for tortious interference with a dead body is not precluded by the litigation privilege. There is no dispute that the tortious interference with Sexton's body began and ended on the cruise ship, well before this litigation commenced and the litigation privilege was triggered. The fact that the Plaintiff only discovered this claim through litigation discovery is of no moment. *See Century Sr. Servs. v. Consumer Health Ben. Ass'n, Inc.*, 770 F. Supp. 2d 1261, 1265 (S.D. Fla. 2011) (Martinez, J.) ("[A] party may not use the litigation privilege to escape liability for an earlier tortious act simply by informing potential plaintiffs of the tortious act during the course of subsequent litigation. Only actions related to and taken during the course of litigation are protected by the privilege."). Moreover, immunizing parties from their own misconduct merely because they reveal it during discovery is irreconcilable with the routine practice of granting leave to amend complaints "based on a fact learned during discovery . . . to add any new claims or parties or ask for additional relief that could not have been asserted before" discovery. *See, e.g., Aldridge v. Travelers Home & Marine Ins. Co.*, No. 1:16-CV-1247-SCJ, 2018 WL 3472045, at *1 (N.D. Ga. Jan. 22, 2018) (citation omitted). There is no

persuasive argument that a party cannot assert a claim that existed prior to litigation merely because that claim was identified through discovery. While a party may not embark upon a fishing expedition merely to search for new claims during discovery, the fact that a new claim was uncovered during discovery does not immunize the wrongdoer from its pre-litigation misconduct.

Applying the same principles, the Court reaches a different result when it comes to the tort of outrage claim. This claim is almost entirely duplicative of the tortious interference with a dead body claim, but with one exception: the "outrage" complained of is the actual display of the photographs to the Plaintiff, the decedent's son. Those photographs were, presumably, displayed to the Plaintiff's son by the Plaintiff's counsel after Carnival or its counsel produced those photographs during this litigation. While the tortious interference with a dead body commenced and ended prior to the litigation, the facts underlying the tort of outrage commenced on the cruise ship and ended only when the photographs were provided to the Plaintiff during this litigation. Thus, the Court is presented with what appears to be an issue of first impression: Does the litigation privilege preclude a claim that was all but complete prior to the litigation, and only ripened as a result of conduct during the litigation?

The Court holds, narrowly and on the specific facts of this case, that the litigation privilege does preclude the tort of outrage claim. The Florida Supreme Court has held that the litigation privilege requires that "absolute immunity must be afforded to any act occurring during the course of a judicial proceeding, regardless of whether the act involves a defamatory statement or other tortious behavior . . . , so long as the act has some relation to the proceeding." *Levin, Middlebrooks, Mabie, Thomas, Mayes & Mitchell, P.A. v. U.S. Fire Ins. Co.*, 639 So. 2d 606, 608 (Fla. 1994). What makes this case unusual is that the act of producing documents as required during discovery also satisfied the element of a tort. The Court finds that this scenario is within the heartland of the conduct intended to be immunized by the litigation privilege. The "rationale behind the immunity" is to reinforce that "participants in litigation must be free to engage in unhindered communication . . . ." *Id.* Applying these principles in the absence of controlling authority, the Court finds that the litigation privilege immunizes Carnival from liability for a claim whose final element – sharing the outrage-causing photographs – happens to also be mandated by the Federal Rules of Civil Procedure concerning discovery. To punish a party for disclosing materials in discovery that it was legally obligated to disclose would chill the "unhindered communication" that the privilege is designed to promote.

Having assessed the applicability of the litigation privilege to both counts at issue, the Court now wishes to underscore the distinction between its

holding that the litigation privilege does not immunize Carnival from Count VII, for tortious interference with a dead body, but does immunize Carnival from Count VIII, for the tort of outrage. The litigation privilege generally immunizes a party or its counsel from conduct or, specifically, misconduct, during litigation. *Levin, Middlebrooks, Mabie, Thomas, Mayes & Mitchell, P.A.*, 639 So. 2d at 608 ("The rationale behind the immunity afforded to defamatory statements is equally applicable to other misconduct occurring during the course of a judicial proceeding."). With respect to the tort of outrage claim, the tortious misconduct – in a strictly formal sense – was the display of the photographs through the production of documents during discovery. That litigation conduct triggered the cause of action just like an untrue statement in a complaint or a deposition might trigger a defamation claim in the paradigmatic litigation privilege fact pattern. By contrast, the tortious interference with a dead body claim existed before the litigation. The production of documents that ultimately underlie that claim might have revealed the existence of that claim, but it did not cause that claim to come into existence. Hence, that production is not protected by the litigation privilege.

Finally, the Court wishes to commend Carnival's candid acknowledgement of the absence of closely analogous case law and in some instances cases in conflict with its arguments. Although the Court disagrees with several positions taken in the motion, that is in no part due to lack of skilled advocacy at the fringes of both DOHSA and the litigation privilege.

### 4. Conclusion

For the reasons set forth above, the Court **grants in part** and **denies in part** Carnival's motion to dismiss (**ECF No. 26**). Specifically, Count VIII, for tort of outrage, is dismissed. This case shall **remain open**.

**Done and ordered**, in Miami, Florida on November 24, 2020.

_____
Robert N. Scola, Jr.
United States District Judge