United States District Court
for the
Southern District of Florida

| | |
|---|---|
| Skyler Wayne Sexton, Individually and as Personal Representative for the Estate of Kimberly Sexton, deceased, Plaintiffs, <br><br> v. <br><br> Carnival Corporation, and others, Defendants. | ) ) ) ) ) ) ) ) ) ) Civil Action No. 20-20990-Civ-Scola |

**Order Granting In Part Defendant's Motion for Summary Judgment**

Plaintiff Skyler Wayne Sexton ("Plaintiff") brought this action against Defendant Carnival Corporation ("Carnival") seeking to recover for damages suffered related to the death of Kimberly Sexton ("Sexton") while she was aboard the *Carnival Sunshine* cruise ship in March 2019. (Second Am. Compl. ("complaint"), ECF No. 24 at ¶14.) Carnival moves for summary judgment on all of the Plaintiff's remaining counts. (ECF No. 46.) The Plaintiff opposes the motion arguing the genuine issues of fact remain to be decided at trial. (ECF No. 58.) Having considered the parties' briefing, the record, and the relevant legal authorities, Carnival's motion is **granted in part and denied in part. (ECF No. 46.)**

1. **Background**

The Plaintiff brings this wrongful death action against Carnival in his individual capacity, and on behalf of the Estate of his mother Kimberly Sexton and of Sexton's survivors Judy Burton, Sexton's mother, and Claire Hardy, an unrelated minor. (ECF No. 24 at ¶ 2.)

Kimberly Sexton and 18 of her family members and friends, including the Plaintiff, were aboard the *Carnival Sunshine* in March 2019. ECF No. 24 at ¶15; ECF No. 47 at ¶ 1.) On or about March 22, 2019, Sexton was taken to the ship's on-board medical center with complaints of shortness of breath and a sore throat. *Id.* The onboard physician and nurses examined Sexton and she was prescribed Cephalexin. (ECF No. 1 ¶ 16.) Sexton was discharged from the medical center shortly thereafter. (*Id.*)

Later that day, Sexton began having trouble breathing and ultimately went into cardiac arrest. (ECF No. 24 at ¶ 16; ECF No. 47 ¶¶ 3,4.) The

shipboard medical staff attempted to resuscitate Sexton. Their efforts were unsuccessful, and Sexton was pronounced dead on March 22, 2019. (ECF No. 24 at ¶ 16; ECF No. 47 ¶ 5.)

Carnival has a post-mortem care policy. (ECF No. 47 at ¶ 11; ECF No. 58 at ¶ 11.) Section 4.2 of the post-mortem care policy provides "contact photo manager to send a designated person to take photos of the place of death and also to take photos of the body from various angles." The body must be naked and with all lines and tubes still in place." (ECF No. 58-5.). Consistent with that policy, a Carnival photo manager, under the direction of an onboard doctor, photographed Sexton's naked body from various angles. (ECF No. 47 at ¶¶ 11, 12).[1] Carnival did not ask Sexton's relatives for permission to take the photographs despite its knowledge that Sexton's next of kin were on the vessel. (*Id.* at ¶¶ 9-12.) The Plaintiff did not learn of the photographs until the discovery phase of this litigation.

Sexton is survived by the Plaintiff, her son, Burton, her mother, and Hardy, a minor in her care. (ECF No. 24 at ¶ 2.) The Plaintiff, Sexton's son, and Burton, Sexton's mother, were adults at the time of Sexton's death. The Plaintiff had not lived with Sexton for 9 years. (ECF No. 47 at ¶ 17; ECF No. 58 at 3.) After the Plaintiff moved out of Sexton's home, Sexton provided him with financial assistance. (ECF No. 47 ¶ 17.) Sexton gave the Plaintiff $200 for groceries on a bi-weekly basis and had previously paid for the Plaintiff's utility bills. (ECF No 47 at ¶ 18; ECF No. 58 at ¶ 18.) Burton did not live with Sexton, but Sexton would occasionally bring her soda and ice cream. (ECF No. 47 at ¶ 28.)

Sexton lived with Hardy, a minor, for three years before her death. (ECF No. 47 at ¶ 19; ECF No. 58 at ¶ 19.) Hardy is the daughter of Sexton's ex-boyfriend and continued living with Hardy after their separation. (ECF No. 47 at ¶ 20 No. 58 at ¶ 19.) After Sexton's death, the Plaintiff and his wife adopted Hardy and she now lives with them. Sexton's funeral expenses were paid through a combination of community funding, including funds raised through "Go Fund Me," and by the Veterans of Foreign Wars Organization. (ECF No. 47 at ¶ 19; ECF No. 58 ¶ 19.)

The Plaintiff initiated this action on March 4, 2020. (ECF No. 1.) The operative complaint asserts the following counts against Carnival: (1) negligent hiring and retention; (2) negligent provisioning or equipping of the medical

---

[1] The Plaintiff disputes that the photographs were taken in a manner consistent with Carnival's post-mortem care policy and argues that the photographs were taken under a different security policy. The Plaintiff's response indicates that he will supplement the motion with the deposition of Dr. Joseph Scott, to support his position, however, that evidence was never filed nor did the Plaintiff seek leave to do so.

facility; (3) negligence for the acts of the medical staff under respondeat superior and agency principles, ; (4) tortious interference with a dead body; and (5) tort of outrage. (ECF No. 24.) The complaint alleges that the three survivors "lost support and services, funeral expenses, [Sexton's] companionship and protection, mental pain, and suffering, loss of nurture and guidance…" (ECF No. 24 at ¶ 16.) The Court previously dismissed the Plaintiff's claim for the tort of outrage because it was barred by the litigation privilege. (ECF No. 35.)

### 2. Legal Standard

Summary judgment is proper if following discovery, the pleadings, depositions, answers to interrogatories, affidavits and admissions on file show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); Fed. R. Civ. P. 56. "An issue of fact is 'material' if, under the applicable substantive law, it might affect the outcome of the case." *Hickson Corp. v. N. Crossarm Co.*, 357 F.3d 1256, 1259–60 (11th Cir.2004). "An issue of fact is 'genuine' if the record taken as a whole could lead a rational trier of fact to find for the nonmoving party." *Id.* at 1260. All the evidence and factual inferences reasonably drawn from the evidence must be viewed in the light most favorable to the nonmoving party. *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 157 (1970); *Jackson v. BellSouth Telecomms.*, 372 F.3d 1250, 1280 (11th Cir. 2004).

Once a party properly makes a summary judgment motion by demonstrating the absence of a genuine issue of material fact, whether or not accompanied by affidavits, the nonmoving party must go beyond the pleadings through the use of affidavits, depositions, answers to interrogatories and admissions on file, and designate specific facts showing that there is a genuine issue for trial. *Celotex*, 477 U.S. at 323–24. The nonmovant's evidence must be significantly probative to support the claims. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986). The Court will not weigh the evidence or make findings of fact. *Anderson*, 477 U.S. at 249; *Morrison v. Amway Corp.*, 323 F.3d 920, 924 (11th Cir. 2003). Rather, the Court's role is limited to deciding whether there is sufficient evidence upon which a reasonable juror could find for the nonmoving party. *Id.*

### 3. Discussion

The parties agree that the negligence claims are governed by the Death on the High Seas Act ("DOHSA"), 46 U.S.C. § 761, and that tortious interference claim is governed by common law. Carnival moves for summary

judgment on three grounds: (1) neither the Plaintiff nor the survivors are dependent on Sexton under DOHSA; (2) the Plaintiff has failed to allege any pecuniary damages suffered by any of the survivors; and (3) the tortious interference claim fails as a matter of law. (ECF No. 46.) In response, the Plaintiff abandons his claim for pecuniary damages on behalf of Burton, and otherwise argues that he and Hardy are Sexton's dependents. (ECF No. 58 at 10-13.) The Court first addresses the negligence claims and then turns to the tortious interference claim.

### A. Negligence Claims

DOHSA generally governs wrongful death actions occurring at least twelve nautical miles from the United States coastline. *Kennedy v. Carnival Corp.*, 385 F. Supp. 3d 1302, 1314 (S.D. Fla. 2019) (Torres, MJ.), *report and recommendation adopted*, No. 18-20829-CIV, 2019 WL 2254962 (S.D. Fla. Mar. 21, 2019) (Williams, J.). DOHSA mandates that a personal representative bring the cause of action. The representative can only bring a claim and attempt to recover on behalf of the following individuals: a decedent's spouse, a parent, a child, or a dependent relative. *See* 46 U.S.C. § 30301.

"Dependency" in DOHSA is defined as "the existence of a legal or voluntarily created status where the contributions are made for the purpose and have the result of maintaining or helping to maintain the dependent of [her] customary standard of living." *Martins v. Royal Caribbean Cruises Ltd.*, 216 F. Supp. 3d 1347, 1368 (S.D. Fla. 2016) (Goodman, J.) "This definition requires that some form of financial dependency exist between decedent and 'dependent relative.'" *Id.*

Recovery under DOHSA is expressly limited to pecuniary losses. *Sanchez v. Loffland Bros. Co.*, 626 F.2d 1228, 1230 (5th Cir. 1980) ("DOHSA specifically limits recoverable damages to those pecuniary in nature."). "The measure of recovery under … DOHSA is the actual pecuniary benefits that the decedent's beneficiaries could reasonably have expected to receive from the continued life of the decedent." *Solomon v. Warren,* 540 F.2d 777, 786 (5th Cir.1976). Pecuniary losses include loss of support, loss of services, and loss of nurture and guidance. *Tello v. Royal Caribbean Cruises, Ltd.*, 946 F. Supp. 2d 1340, 1343 (S.D. Fla. 2013) (Lenard, J.)). Moreover, funeral expenses are considered pecuniary damages under DOHSA. *Kennedy*, 385 F. Supp. 3d at 1318. To sustain recovery for pecuniary loss, the value of loss must be proven and reasonably certain. *Id.* The parties dispute whether the Plaintiff and Hardy are dependent relatives and whether they have proven pecuniary damages.

The amended complaint alleges that all "survivors suffered lost support

and services, funeral expenses, Decedent's companionship and protection, mental pain and suffering, loss of nurture and guidance, and all other damages as allowable by law." (ECF No. 24 at ¶ 16.) However, it is unclear from the complaint which survivor suffered what harm and why, and the Plaintiff does not argue in his response in opposition that he has suffered any damages outside of loss of support in the form of the biweekly contributions and funeral costs. Because it is undisputed that Sexton's funeral was paid for by community donations, the Court limits the Plaintiff's pecuniary damages to loss of support, indeed, they were the only damages he claimed with specificity.

  The Plaintiff argues that he is entitled to loss of support damages because he is Sexton's child and relied on Sexton's bi-weekly $200 contribution to his household. The Plaintiff testified that he has received these biweekly payments since he moved out of Sexton's house in 2010, in addition to sporadic financial help with bills he cannot pay. (Skyler Sexton Dep., ECF No. 47-1 at 28:1-24). "[W]hatever may be the rule for minor children, it is clear that those who have reached their majority must be very specific to show that their parents' guidance had a pecuniary value beyond the irreplaceable values of companionship and affection." *Kallas,* 2007 WL 1526699 at \*2 (quoting *Solomon,* 540 F.2d at 789) (internal quotations omitted).

  The Court finds that an issue of fact remains as to whether Sexton's contributions to the Plaintiff are sufficient to deem him a dependent relative under DOHSA. Indeed, it is undisputed that these contributions were made, and that Sexton relied on them to purchase groceries. Carnival argues that the contributions were small and made on an ad hoc basis, and thus, not sufficiently specific to show dependency. However, making inferences in favor of the nonmovant as the Court must, it is hard-pressed to find that $200 every two weeks is a nominal financial contribution. Additionally, the Plaintiff has adduced sufficient evidence that the $200 payments were made so consistently that he came to depend on them. Accordingly, Carnival's motion is denied on this ground. *Martins,* 216 F. Supp. 3d at 1368 (denying motion for summary judgment in part because the evidence showed that the decedent contributed $200 to her mother's household in the year and half before her death such that the relative came to depend on the contribution).

  Next, the Court addresses whether Hardy is entitled to recover pecuniary damages under the circumstances. The Plaintiff argues that Sexton was Hardy's mother in *loco parentis*. The evidence shows that Sexton had known Hardy since Hardy was two years old because Sexton was romantically involved (not married) with Hardy's father. (Skyler Sexton Dep., ECF No. 47-1 at 16-19; Chasiti Sexton, Dep., ECF No. 47-2 at 24-27.) After their separation, Hardy remained living with Sexton, Sexton cared for her and provided for

Hardy's necessities, although Sexton did not formally foster or adopt Hardy. (Skyler Sexton Dep., ECF No. 47-1 at 16-19.) The Plaintiff claims that Hardy suffered the loss of parental nurture and guidance, and loss of support and services.

Assuming without deciding that Hardy was dependent on Sexton under DOHSA, there exists no evidence in the record of the value of Sexton's contributions to Hardy and thus recovery is precluded. To sustain recovery for pecuniary loss, the value of the loss must be proven and reasonably certain. *Martins*, 216 F. Supp. 3d at 1368. Unlike the Plaintiff's claim for loss of support which is specific as to the amount and frequency payments were made, Hardy's claim for loss of support damages is not supported by any evidence in the record. The Plaintiff has failed to substantiate the amount of Sexton's contributions to Hardy or a method for calculating same. The Court notes that the Plaintiff indicated that he would supplement the record with Sexton's tax returns if "deemed necessary", however, he never moved to file the tax returns, nor did he explain their relevance for purposes of establishing a method for calculating Hardy's damages. (ECF No. 58 at ¶ 19.) *See Martins*, 216 F. Supp. 3d at 1370 (denying siblings claim for pecuniary damages because the sibling failed to show he was a dependent of the decedent and even if he had "[t]here is no evidence in the record that G.E. sustained any loss of support, loss of services, loss of nurture, guidance, care and instruction, or loss of inheritance, let alone what the value of any such damages would be," and by contrast allowing mother's claim to proceed because it was supported by some evidence); *see also Ivy v. Sec. Barge Lines, Inc.,* 585 F.2d 732, 740 (5th Cir.1978) (reversing trial court's submission to the jury of the issue of parent's pecuniary damages because there was "[n]o documentary evidence was introduced establishing the amount of [the decedent's] financial contributions to the family, nor were his services around the house in any way valued.").

Hardy's claim for loss of parental nurture fails for similar reasons. Although these types of damages generally cannot be computed with any degree of mathematical certainty, *Solomon*, 540 F.2d at 788, the Plaintiff bears the burden to show some evidentiary basis for the assessment of parental nurture damages. *Compare Martins*, 216 F. Supp. 3d at 1370 *and Handley v. United States*, No. 5:17-CV-012; 78-HNJ, 2021 WL 2023057, at *55 (N.D. Ala. Mar. 18, 2021) (Johnson, J.) (denying the plaintiff's claims for pecuniary damages for the decedent's minor children because "[a]bsent any evidence regarding the value of Mr. Handley's lost care [to minor children of decedent], counseling, training, and education to Jayci and J.H. until [age of maturity], or any expert testimony regarding the reduction of J.H.'s potential future damages to present value, the court cannot award damages for those lost services.") *with*

*Matter of Adventure Bound Sports, Inc.,* 858 F. Supp. 1192 (S.D. Ga. 1994) (recognizing that the parties seeking parental nurture damages must present evidence as to the monetary value of these services, the court awarded each surviving child parental nurture damages upon review of the salaries of teachers, guidance counselors, and psychologists). Accordingly, summary judgment is granted in favor of Carnival on the Plaintiff's negligence claims as they relate to Hardy.

### B. Tortious Interference

The Plaintiff seeks to recover damages for mental distress as a result of Carnival's mishandling of Sexton's body. The complaint alleges that Carnival personnel took 36 photographs of her after she died, "including 24 photographs of her fully naked body, from every angle . . . without consent from her next of kin," despite the fact that Sexton was travelling with 18 companions. (ECF No. 24 at ¶¶ 22-23.)

The Florida Supreme Court has recognized a cause of action for tortious interference with a dead body. *Kirksey v. Jernigan,* 45 So.2d 188, 189 (Fla.1950). The claim requires proof of impact, or willful or wanton conduct that amounts to malice. *Id.* The parties dispute whether Carnival's conduct rises to malice as a matter of law. Upon careful consideration, the Court finds that it does not.

Florida courts have recognized a cause of action for tortious interference with a dead body in limited circumstances. For example, in *Kirksey*, an undertaker took the body of the plaintiff's five-year old son and embalmed it without parental consent. *Kirksey*, 45 So. 2d at 189. The undertaker refused to return the body to the mother and then charged the mother twice the usual amount for embalming. *Id.* The Florida Supreme Court held that the impact rule, precluding recovery for mental pain and anguish unconnected to a physical injury in negligence cases, did not extend to cases where the wrongful act is such as to reasonably imply malice. *Id.* The court reasoned that the plaintiff's claim could survive because "[t]he invasion of such right by unlawfully withholding the body from the relative entitled thereto is an actionable wrong, for which substantial damages may be recovered." *Id.* at 189-90. *See also Sherer v. Rubin Memorial Chapel, Ltd.,* 452 So.2d 574 (Fla. 1984) (reversing order of dismissal of claim for tortious interference with a dead body where a funeral home dressed the wrong cadaver and then tried to convince the family that the cadaver was their loved one); *Halpin v. Kraeer Funeral Homes, Inc.,* 547 So.2d 973 (Fla. 4th DCA 1989) (reversing summary judgment in favor of defendant funeral home where the wrong body was placed in the

casket for a viewing and the employees attempted to convince the mourners that the stranger's body was that of their decedent). In *Jackson v. Rupp*, 228 So. 2d 916, the appellate court held that the defendant's unauthorized autopsy of the decedent amounted to wanton misconduct. There, the decedent's family members had denied their consent to an autopsy on two occasions and the defendant nonetheless proceeded with the autopsy to determine the cause of death. *Id.* The court also noted that the defendant had performed an autopsy for reasons not authorized by the relevant local ordinance. *Id.*

This case is distinguishable from those mentioned above where the courts have found malice and is more analogous to *Hart v. United States*, 894 F.2d 1539, 1549 (11th Cir. 1990). There, the decedent's wife and mother brought an action against the United States for alleged mishandling of an investigation to identify the decedent's remains. As part of the investigation, the government took photographs of what it believed were the decedent's remains. The photographs were taken without his family's permission. *Id.* at 1548. The Eleventh Circuit distinguished *Kirksey* and *Sherer* because the government did not make mistakes which they deliberately tried to hide from the family, nor did the government publish the photographs at issue. *Id.* at 1549, n. 2. The appellate court noted that the government did its best to identify the decedent's body and when that failed, complied with most of the family's requests. *Id.*

Here too, Carnival's conduct does not rise to the level of malice or outrageous conduct addressed above. Although Carnival did not seek permission to take the photographs, Carnival did not act in a deceitful manner by intentionally lying to Sexton's family or disregarding the family's express wishes or instructions. *Hart*, 894 F.2d 1539, 1549 (11th Cir. 1990)(reversing grant of summary judgment on claim for mental anguish resulting from interference with a dead body because the defendant did not make intentional mistakes that it tried to hide from the families, and instead complied with every request made by the family). Additionally, unlike *Kirksey* and *Sherer*, Carnival did not interfere with the family's right to control Sexton's body or affect their right to a burial. The Plaintiff has not come forward with any evidence to counter Carnival's showing that it handled Sexton's body in a manner consistent with its own policies and to exclude trauma as a cause for Sexton's death. (Dr. Dayan Campino Dep., ECF No. 47-3 at 90:7-22, 92:9-18.) Accordingly, without more, Carnival's handling and photographing of the body do not constitute malicious conduct and the Plaintiff's tortious interference claim fails.

The Plaintiff argues that the stripping and photographing of the body was outrageous and malicious because the Plaintiff's death was not suspicious and

there were no signs of trauma thus there was no need for the photographs. However, the shipboard doctor explained that because the medical staff did not know the cause of the Plaintiff's sudden death, the post-mortem photographs were necessary to exclude trauma as the cause of death. (*Id.*) The Plaintiff attempts to discredit Carnival's evidence, arguing that the photographs were part of a security report and that "Dr. Joseph Scott testified that the photographs should be contained in the medical file if they were taken for a medical purpose. A copy of the transcript will be supplemented since it was not available to counsel at the time of filing this Response." (ECF No. 58 at 16 n.14.) However, the deposition transcript was never filed, and the Plaintiff's argument is therefore unsubstantiated. The filing of the photographs as part of security folder, without more, is not sufficient to raise an issue of fact as to whether Carnival's conduct was malicious.

Lastly, the Plaintiff has not cited any analogous cases supporting his position that under the circumstances of this case, the entry of summary judgment would be improper.

### 4. Conclusion

For these reasons, Carnival's motion for summary judgment is **granted in part and denied in part**. **(ECF No. 46.)** The Plaintiff's claims for pecuniary damages on behalf of Hardy and for tortious interference with a dead body are **dismissed**.

**Done and ordered** at Miami, Florida on June 10, 2021.

Robert N. Scola, Jr.
United States District Judge